UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LAURA K. McMILLAN, | CIVIL ACTION |
| Plaintiff | NUMBER |
| versus | |
| | SECTION |
| PICCOLO, LLC; MARC SARTELE; BENSON, PICKETT, LAURICELLA & ROME LLC d/b/a MRH & ASSOCIATES; and ABC INSURANCE COMPANY, | MAGISTRATE |
| Defendants | **JURY TRIAL DEMANDED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

NOW INTO COURT through undersigned counsel comes the plaintiff, Laura K. McMillan, who asserts the following claims.

1.

This is an action for damages and other relief resulting from violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (the "FDCPA"), which prohibits debt collectors from engaging in deceptive, abusive, and unfair debt collection practices, and for other relief under state law.

### **JURISDICTION AND VENUE**

2.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper in the Eastern District of Louisiana, which is the judicial district wherein a substantial part of the events relevant to the claims made herein occurred. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

3.

Plaintiff, Laura K. McMillan ("McMillan"), is a person of full age of majority domiciled in Franklinton, Louisiana.

4.

Defendant, Picollo, LLC ("Picollo"), is a Louisiana limited liability company with a principal place of business located at 141 Robert E. Lee Blvd., Suite 134, New Orleans, LA 70124.

5.

Defendant, Marc Sartele, believed to be domiciled in Louisiana, is the registered agent and sole member of Piccolo, LLC, according to the records of the Louisiana Secretary of State.

6.

Defendant, Benson, Pickett, Lauricella & Rome, LLC is a Louisiana limited liability company with a principal place of business located at 4734 Stanford Street, Metairie, LA 70006. At all times relevant, Benson, Pickett, Lauricella & Rome, LLC was doing business as "MRH & Associates," a trade name registered with the Louisiana Secretary of State. Benson, Pickett, Lauricella & Rome, LLC is hereinafter referred to as "Benson Picket," "MRH," or "Benson Pickett d/b/a MRH & Associates."

7.

Piccolo, Marc Sartele, and Benson Pickett d/b/a MRH & Associates are debt collectors as defined by 15 U.S.C. § 1692a(6).

8.

ABC Insurance Company is the fictitious name of one or more insurance providers, who have issued a policy or policies of insurance in favor of one or more of the defendants, which

2

policy or policies cover the claims made herein. ABC Insurance Company is liable *in solido* with the defendants pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:1269(B).

## FACTS

9.

On May 7, 2007, Piccolo filed suit against McMillan in *Piccolo, LLC as Assignee of Citibank,* Docket No. 95674, in the 22nd Judicial District Court for the Parish of Washington, State of Louisiana (the "lawsuit"). The lawsuit alleged that McMillan owed a principal balance of $3,463.84 on a revolving credit account, together with interest, attorney fees, and costs.

10.

Piccolo obtained a preliminary default on June 11, 2007, and a final judgment on October 27, 2008, for $3,463.84 together with interest, attorney fees, and costs ("the debt").

11.

After Piccolo obtained the judgment, McMillan made some payments on the debt to Piccolo's prior attorney of record, Gerard O. Salasi IV.

12.

Piccolo received the payments McMillan made to Gerard O. Salasi IV.

13.

At some point, either before or after the judgment was obtained, Piccolo retained Benson Pickett d/b/a MRH & Associates to collect the debt.

### The Settlement

14.

On September 20, 2012, Benson Pickett d/b/a MRH & Associates mailed to McMillan's father a letter addressed to McMillan, attempting to collect the Piccolo debt. The letter

demanded a total of $9,050.24, which included the $3,463.84 principal amount plus $3,304.08 interest and $565.00 "add on" charges, with credits of $250.00. The letter threatened wage garnishment, and gave McMillan three days to pay in full or negotiate an amicable agreement. The unsigned letter was written over the name of Lester Trey ("Trey"), an MRH employee.

15.

An accurate copy of the September 20, 2012 MRH letter (disregarding the handwritten notes by plaintiff) is attached hereto as **Exhibit A**.

16.

McMillan responded to this letter and called MRH. She first spoke to Mike Rome, who told her that MRH was collecting a Citibank judgment, and that if McMillan did not pay it or agree to a settlement that day, her wages would be garnished. Rome then transferred her to Trey.

17.

During that conversation, Trey and McMillan reached an agreement to settle Piccolo's debt in full for the payment of $3,500.00 (the "settlement agreement")."

18.

After reaching the settlement agreement, MRH mailed McMillan two documents. The first is a letter dated October 1, 2012 on MRH letterhead, addressed to Piccolo, stating that McMillan had agreed to pay $3,500.00 "as settlement in full on this debt" and asking Piccolo to indicate its acceptance by signing below. Below, there was a signature block with lines to be completed and signed to indicate acceptance of the settlement offer.

19.

MRH communicated the terms of the settlement to Piccolo.

20.

In the alternative, MRH did not communicate the terms of the settlement to Piccolo.

21.

The signature block was completed and signed by Lester Trey on behalf of "Piccolo Law Office" and dated October 1, 2012.

22.

An accurate copy of the October 1, 2012 MRH letter to Piccolo with the completed acceptance is attached hereto as **Exhibit B**.

23.

The second document MHR mailed to McMillan was an ACH Authorization Agreement for Electronic Payments, also dated October 1, 2012. When MRH and McMillan agreed to settle the Piccolo debt, they also agreed that McMillan would pay the $3,500.00 by periodic ACH debits from her bank account. The ACH authorization agreement lists the dates and amounts of the first eight of these ACH payments, which McMillan consented to. The ACH authorization also notes that the debits would be reflected on McMillan's bank statements as "Mike Rome Holdings LLC."

24.

Under the settlement agreement, the parties understood that MHR or Mike Rome Holdings would initiate all of the ACH payments, and McMillan would not be responsible for initiating payments. MRH would take care of all of that.

25.

An accurate copy of the October 1, 2012 ACH authorization agreement is attached hereto as **Exhibit C**.

26.

The ACH debits commenced on October 2, 2012 with a $400.00 payment, and continued until all of the first eight payments listed in the ACH authorization agreement were paid.

27.

In July 2013, after the last of the eight payments listed in the ACH authorization agreement had been made, Trey called McMillan's father and told him that because she had made regular payments, they [MRH] were going to give her a break and reduce her payments to $100.00 a month.

28.

Beginning in August 2013, the ACH payments were $100.00 per month.

29.

In March 2014, the ACH payments changed on McMillan's bank statements from Mike Rome Holdings to Benson Picket.

30.

In September 2014, Trey called McMillan and told her that her next payment would complete their agreement and that she could have the judgment removed. The next ACH payment was made on October 1, 2014.

31.

Piccolo received the ACH funds collected by Mike Rome Holdings and Benson Picket.

32.

In late October or early November 2014, McMillan called Trey and asked if he could send her a letter stating that the debt had been paid. Trey replied that the account had been sold and he couldn't do that. He also told her that the settlement had been paid in full and that she really didn't need a letter.

**The Garnishment**

33.

On May 26, 2015, Piccolo filed a petition for garnishment in the Washington Parish lawsuit, to collect an alleged balance on the debt.

34.

In the garnishment petition, Piccolo represented to the court in Washington Parish that McMillan still owed a total of $14,604.82. The "Statement of Sums Due" filed with the petition listed the principal of $3,463.84, interest of $10,271.90, attorney fees of $3,433.93, and costs of $985.15, with a credit of $3,550.00 for "Pre-Garnishment Payments (Credit to Defendant)."

35.

The $3,550.00 credit listed in the "Statement of Sums Due" filed with the garnishment petition included the money that McMillan had paid to settle the debt.

36.

The Statement of Sums Due filed with the garnishment petition was signed by Marc Sartele, above this certification: "I certify that the above listed and/or enumerated amounts are true and correct, to the best of my knowledge, information and belief, on this Tuesday, May 19, 2015."

37.

The Statement of Sums Due was false.

38.

Marc Sartele knew or should have known that his certification of the correctness of the Statement of Sums Due was false.

39.

McMillan's debt to Piccolo had been settled in full when Piccolo filed a garnishment petition against her in May 2015.

40.

McMillan did not owe anything to Piccolo when it filed a garnishment petition against her in May 2015.

41.

On June 26, 2015, McMillan's bi-weekly wages began to be garnished for $239.64 plus a $3.00 garnishment fee, on account of Piccolo's garnishment petition.

**Communications After McMillan Learned of the Garnishment**

42.

McMillan was notified of the garnishment by her employer. Upon learning that Piccolo was garnishing her wages, McMillan called Pamela Hansen, the attorney of record for Piccolo who filed the garnishment petition. Hansen referred McMillan to someone with a last name beginning in "A."

43.

McMillan called Ms. A, told her of the garnishment, and asked why her wages were being garnished when she had paid the debt. Ms.A pulled up McMillan's account, saw that she had been making payments to Mike Rome, and asked why she had stopped paying. McMillan described the settlement to Ms. A, who denied having any paperwork on it. McMillan told her of the settlement agreement she had received from HRH, and Ms. A requested that she fax her a copy, which McMillan did the next morning. McMillan heard nothing more from Ms. A.

44.

McMillan also called Lester Trey at MRH and informed him of the garnishment. Trey pulled up her account and told McMillan that she had made all of her payments. He stated that

they had agreed on $3,500.00 to settle the debt and nothing more was owed. Trey read off all of McMillan's payments since 2009, by amount and date, and said that McMillan had actually paid more than $3,500.00.

45.

McMillan asked Trey to send her a letter stating that her debt was paid in full, but Trey said that they [MRH] no longer had the account and he couldn't do that.

### **AUTHORITY OF MRH TO SETTLE ON BEHALF OF PICCOLO**

46.

At the time MRH offered a settlement to McMillan, MRH the had actual and apparent authority to bind Piccolo to the terms of the settlement.

47.

McMillan reasonably relied on this apparent authority of MRH to settle the Piccolo debt. She reasonably relied on MRH's representations when she accepted the settlement offer and approved the ACH payments from her bank account.

48.

In the alternative, MRH had apparent but not the actual authority to bind Piccolo to the terms of the settlement it negotiated with McMillan.

49.

If MRH did not have the actual authority of Piccolo to settle, then the offer of settlement was nothing more than a collection agency's ploy to induce McMillan to make payments, with no intention on MRH's part to confect a settlement on the terms stated to McMillan.

## STATUS OF PICCOLO AND McMILLAN'S ACCOUNT

50

On information and belief, Piccolo or a majority interest of its stock has been sold to another company.

51

If Piccolo has been sold, its successor is liable jointly, severally, and in solido for any liability of Piccolo resulting from the events described in this action.

52.

On information and belief, Piccolo or its successor has sold McMillan's account to another entity.

## FDCPA VIOLATIONS

53.

The express purpose of the Fair Debt Collection Practices Act ("FDCPA") is to eliminate abusive debt collection practices by debt collectors, and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. 15 U.S.C. § 1692(e).

54.

Piccolo, LLC violated the FDCPA, in respects including but not limited to the following:

(a) Piccolo violated 15 U.S.C. § 1692e by using false, deceptive, and misleading

representations and means to collect an alleged debt.

(b) Piccolo violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount

and legal status of an alleged debt.

(c)       Piccolo violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect an alleged debt.

(d)       Piccolo violated 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect an amount that was not permitted by Louisiana law, after the debt had been settled in full.

55.

Marc Sartele violated the FDCPA, in respects including but not limited to the following:

(a)       Sartele violated 15 U.S.C. § 1692e by using false, deceptive, and misleading representations and means to collect an alleged debt.

(b)       Sartele violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount and legal status of an alleged debt;

(c)       Sartele violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect an alleged debt;

(d)       Sartele violated 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect an amount that was not permitted by law, after the debt had been settled in full.

56.

If Benson Pickett d/b/a MRH did not have the actual authority of Piccolo to settle the debt on the terms communicated to McMillan by, then Benson and Pickett violated the FDCPA in respects including but not limited to the following:

(a)       Benson Pickett violated 15 U.S.C. § 1692e by using false, deceptive, and misleading

representations and means to collect an alleged debt.

(b)     Benson Pickett violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount and legal status of an alleged debt;

(c)     Benson Pickett violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect an alleged debt;

(d)     Benson Pickett violated 15 U.S.C. § 1692f(1) by using unfair and unconscionable means to collect a debt, due to the lack of actual authority to settle.

57.

As a result of the actions described above, plaintiff has sustained actual damages, including but not limited to loss of wages, the cost of petitioning for a temporary restraining order and injunction to stop the wrongful garnishment, anxiety and mental distress, and other damages for which she should be compensated in amounts to be proven at trial.

**Agency**

58

At all times relevant, Benson Pickett d/b/a MRH & Associates was acting as the collection agent of Piccolo.

59

Benson Pickett d/b/a MRH & Associates held itself out to McMillan as being the duly authorized agent of Piccolo for purposes of collecting McMillan's debt, and as having the authority to settle and compromise the debt.

60.

Piccolo and Benson Pickett acted in concert and are liable jointly, severally and in solido for any damages suffered by McMillan.

### Conversion

61.

Piccolo unlawfully converted McMillan's personal property by wrongfully garnishing her wages.

62.

If MRH did not have the actual authority of Piccolo to settle and compromise the debt, then MRH unlawfully converted McMillan's personal property by instituting ACH debits to her bank account, of which MRH received a share.

### Unjust Enrichment

63.

Piccolo has been unjustly enriched, and McMillan has been impoverished, by Piccolo's garnishment of her wages after the underlying debt had been extinguished through compromise and settlement.

### Executive Officer Liability

64.

Piccolo owed a duty of care to McMillan, to insure that any garnishment proceeding it instituted against her was justified after a careful review of the facts, including a review of the account and payment history, and that the sums sought to be garnished from her wages were actually owed and had not been compromised.

65.

This duty was delegated to and assumed by Sartele, who certified the correctness of the alleged amounts owed in the Statement of Sums Due.

66.

The Statement of Sums Due certified by Sartele was false.

67.

Sartele knew or should have known that the garnishment petition, and the Statement of Sums Due that he signed were false.

68

Sartele breached his duty of care and due diligence that he owed to McMillan, when he authorized and falsely certified the correctness of information in Piccolo's garnishment petition.

69.

Mike Rome, the sole registered officer and agent of Benson Picket d/b/a MRH, knew or should have known that MRH had represented to McMillan that it had the authority to settle her debt to Piccolo, and that Benson Pickett had arranged ACH payments from her bank account, of which Benson Picket was receiving a share.  If Benson Picket did not have the actual authority of Piccolo to settle and compromise McMillan's debt, then Mike Rome is liable to McMillan under the factors defining executive officer liability in Louisiana.

**Actual Damages**

70.

As a result of the facts described hereinabove, McMillan has suffered actual damages in the form of lost wages, the cost of filing a petition for an injunction and temporary restraining order to stop the garnishment, travel costs and loss of time from work to seek legal assistance, emotional stress, embarrassment, and other damages to be proven at trial.

71.

The defendants herein are liable jointly, severally and in solido.

## DECLARATORY RELIEF

72.

Pursuant to 28 U.S.C. § 2201 and 2201, McMillan moves for a declaratory judgment finding that the actions of the defendants herein violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (the "FDCPA").

## INSURER LIABILITY

73.

ABC Insurance Company has issued a policy of insurance in favor of one or more of the defendants, which policy covers the claims made herein.  ABC Insurance Company is liable *in solido* with Midland Funding and MCM pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:655.

74.

The defendants herein are liable jointly, severally and in solido.

## JURY DEMAND

75.

Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff prays for a judgment in his favor and against the defendants and their insurers jointly, severally, and in solido, for:

(a)     Actual and additional damages under 15 U.S.C. §§ 1692k(a)(1) and 1692k(a)(2)(A).

(b)     Costs and reasonable attorney fees under 15 U.S.C. § 1692k(a)(3).

(c)     Interest.

(d)     Declaratory relief.

(e)     Additional relief available under state law, pursuant to this court's supplemental jurisdiction.

(f)     All other relief appropriate in the premises.


Respectfully submitted,

/s/ Steve R. Conley
Steve R. Conley  (LSBA #21246)
321 N. Vermont Street, Suite 210
Covington, LA  70433
Tel: 985-892-7222
consumerlawyer1@gmail.com